# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re the Parenting and Support of: | No. 51956-9-II |
| C.M., | |
| Child, | |
| CASSANDRA WEISENBERGER, | UNPUBLISHED OPINION |
| Appellant. | |
| and | |
| TYLER PAUL MITTGE, | |
| Respondent. | |

MAXA, C.J. – Cassandra Weisenberger appeals the trial court's order regarding the parenting plan relating to CM, the son of Weisenberger and Tyler Mittge. The court ruled that there was no adequate cause to schedule a hearing on Weisenberger's motion to modify the parenting plan, but at the same time revised certain parenting plan provisions.

We hold that (1) the trial court applied an incorrect analysis in finding no adequate cause for a full hearing on modifying the parenting plan and (2) the trial court erred in revising certain parenting plan provisions because the court's ruling represented modifications rather than clarifications of the parenting plan. Accordingly, we reverse the trial court's order ruling that

Weisenberger did not show adequate cause to modify the parenting plan and revising certain parenting plan provisions and remand for further proceedings consistent with this opinion.

FACTS

*Parenting Plan*

Weisenberger and Mittge are the parents of CM. A final parenting plan for CM was entered in Pacific County Superior Court on March 6, 2017 when CM was two years old. At the time, Mittge had a job that required him to work out of state. His work schedule meant that he was out of the state for weeks or months at a time.

The parenting plan provided that CM's primary residential placement would be with Weisenberger. Mittge's visitation with CM was divided into three phases based on when he was off work. Phase 1 applied when Mittge returned to Pacific County, Phase 2 applied when he was home for more than two weeks, and Phase 3 applied when he was home for more than four weeks.

The parenting plan also provided transportation arrangements. The exchange for parenting time would take place at the "Raymond Police Station or another agreed upon location." Clerk's Papers (CP) at 29. In addition, the parenting plan stated that "Lorie Mittge shall not transport the child on pick up." CP at 32.

*Petition for Modification*

A few months after the parenting plan was entered, Mittge left his out-of-state job and moved home to Pacific County. He started working in Aberdeen in Grays Harbor County. After leaving his job, Mittge consistently had visitation with CM every other weekend. In early 2018, Mittge moved to Chehalis in Lewis County

In January 2018, Weisenberger filed a petition for a "minor change" of the parenting plan under RCW 26.09.260(5). Weisenberger also filed a motion for an adequate cause determination on the petition to change the parenting plan.

As grounds for the minor change, Weisenberger stated, "The situation of the child/ren, a parent, or a non-parent custodian has changed substantially. . . . The current parenting/custody order is difficult to follow because the parent who has less residential time with the children has moved." CP at 35. In the declaration attached to her petition, Weisenberger stated, "Since leaving his previous job and moving to Lewis County, Mr. Mittge has consistently had visitation every other weekend. . . . Because the current plan does not apply we've had to sort out visitation on our own." CP at 40. Weisenberger requested that the parenting plan be modified to reflect the status quo.

The trial court heard argument on whether there was adequate cause to schedule a hearing on Weisenberger's petition. Weisenberger argued that there had been a substantial change of circumstances because the parenting plan was designed for Mittge's unique work schedule, but he no longer worked in the out-of-state job. In addition, Mittge had moved to Lewis County and the parenting plan only addressed when Mittge was living in Pacific County. Mittge argued that there had been no change of circumstances and the Phase 3 scenario in the parenting plan applied because he no longer worked out of state.

The trial court concluded that there was no adequate cause to schedule a full hearing and denied Weisenberger's petition to modify the parenting plan. The court stated, "I'm not going to find adequate cause. I think he's in Phase 3. The fact that he lives slightly outside Pacific County doesn't change what I see to be the intent. If he's able to be around on a regular basis, he's entitled to the 50 percent [visitation]." Report of Proceedings (RP) at 29. The court also

3

stated that he was getting a "bad impression" of both parents. RP at 44. "You were definitely giving me the idea that you're trying to alienate this child from this father. . . . No ifs, ands, or buts about that. . . . So – so that's my impression of both of you, neither are very good." RP at 45. The court continued, "I'm a little mystified that you could reach such a good agreement to begin with and suddenly have it deteriorate into what I can only describe in my – or think in my mind reasonable parents would have resolved without bringing the acrimony of these kind of things to a courtroom." RP at 45.

In its written order denying adequate cause, the court outlined a number of "provisions and understandings":

> A. At the present time we will be following Phase Three as noted in paragraph 8 of the Plan, in spite of father's present residence in Lewis County.
> . . . .
>
> D. Transportation shall be as follows:
>
>> i. Shall occur at a midpoint location between the homes of the parties; presently at the Pe Ell Texaco Station.
>>
>> ii. Father may utilize any qualified licensed and insured driver to do the exchanges.
>>
>> iii. If father gives mother at least 24 hours notice, the exchange point may be changed to Galey's in Raymond.
>
> E. For the purpose of determining which Phase of contact we are in, in the Parenting Plan, the terms "home" or "Pacific County" shall include any residential location within 85 miles of Raymond, WA.

CP at 79-80.

*Motion for Reconsideration*

Weisenberger filed a motion for reconsideration. She argued that the trial court erred in finding no adequate cause for a minor change under RCW 26.09.260(5) and improperly modified the parenting plan.

The trial court denied Weisenberger's motion for reconsideration. The court stated that Weisenberger "sought a 'minor modification' when she was really asking for a 'major modification.' " CP at 135-36. The court ruled that Weisenberger did not qualify for a minor change to the parenting plan under RCW 26.09.260(5) because the modification sought was for more than 24 days and because CM no longer was residing a majority of the time with Weisenberger.

Weisenberger appeals the trial court's order ruling that there was no adequate cause to schedule a hearing on her motion to modify the parenting plan and revising certain parenting plan provisions.

## ANALYSIS

### A. ADEQUATE CAUSE FOR HEARING ON MINOR MODIFICATION

Weisenberger argues that the trial court erred when it found that there was no adequate cause for a hearing on her petition for a minor modification of the parenting plan. We hold that the trial court applied an incorrect analysis in finding no adequate cause.

#### 1. Statutory Process for Modification

RCW 26.09.260 addresses the grounds for modifying a parenting plan. Under RCW 26.09.260(1), the general rule is that the court will not modify a parenting plan unless the court finds based on facts that have arisen since the parenting plan or were unknown to the court at the time of the plan "that a substantial change has occurred in the circumstances of the child or the nonmoving party and that the modification is in the best interest of the child and is necessary to serve the best interests of the child." In addition, the court must retain the residential schedule in the parenting plan unless one of the four factors listed in RCW 26.09.260(2) is present.

However, RCW 26.09.260(5) allows a court to adjust residential aspects of a parenting plan through a "minor modification" in the residential schedule "upon a showing of a substantial change in circumstances of either parent or of the child" and without considering the RCW 26.09.260(2) factors. The minor modification procedure is available only if (1) the modification "does not change the residence the child is scheduled to reside in the majority of the time," and (2) at least one of three listed conditions are met. RCW 26.09.260(5). One of the conditions that allows a minor modification is "a change of residence of the parent with whom the child does not reside the majority of the time." RCW 26.09.260(5)(b).

A party seeking to modify a parenting plan must submit a motion and an affidavit setting forth facts showing "adequate cause" for the requested modification. RCW 26.09.270. The trial court must deny the motion without a hearing unless the affidavit establishes adequate cause to schedule a hearing. RCW 26.09.270; *see In re Marriage of MacLaren*, 8 Wn. App. 2d 751, 770-71, 440 P.3d 1055 (2019). If the court finds adequate cause, the court must schedule a hearing on an order to show cause why the requested modification should not be granted. RCW 26.09.270.

To show adequate cause, the petitioner must present evidence that would support a modification under RCW 26.09.260. *MacLaren*, 8 Wn. App. 2d at 774. The petitioner must do more than assert unsupported allegations that would support modification if proved. *Id.* at 771-73. "[T]he moving party must set forth facts and provide supporting evidence – not self-serving or conclusory statements – to establish adequate cause." *Id.* at 774. At a minimum, "adequate cause" requires evidence sufficient to support a finding on each fact the moving party must prove to modify the parenting plan. *Id.* at 772-73.

There is a strong statutory presumption against modification of parenting plans because custodial changes are disruptive to children. *Id*. at 771. Therefore, the statutory adequate cause requirement imposes a heavy burden on the petitioner that must be satisfied before a hearing even will be scheduled. *Id.*

We review a trial court's determination of adequate cause for a proposed parenting plan modification for abuse of discretion. *In re Parentage of Jannot*, 149 Wn.2d 123, 128, 65 P.3d 664 (2003). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. *In re Marriage of Black*, 188 Wn.2d 114, 127, 392 P.3d 1041 (2017). More specifically, "the procedures and criteria set forth in RCW 26.09.260 limit the superior court's range of discretion." *In re Marriage of Hoseth*, 115 Wn. App. 563, 569, 63 P.3d 164 (2003). Therefore, the superior court abuses its discretion if it fails to base its modification ruling on the statutory criteria. *Id.*

2. Adequate Cause under RCW 26.09.260(5)

Weisenberger argues that the trial court erred in ruling that there was not adequate cause for a hearing on her petition to modify the parenting plan under RCW 26.09.260(5). We agree.

a. Substantial Change in Circumstances

The threshold requirement for granting a minor modification under RCW 26.09.260(5) is a showing of a "substantial change in circumstances of either parent or of the child." The trial court did not expressly address this requirement.

There is no question that Mittge's circumstances had changed since the parenting plan was entered. The parenting plan was designed to account for Mittge's long work-related absences from his home in Pacific County, but Mittge soon left that job and moved home. Mittge had a new job in Grays Harbor County with unknown work hours. And Mittge

eventually relocated to Chehalis in Lewis County. The question here is whether these changed circumstances were substantial enough under RCW 26.09.260(5) to require a finding of adequate cause for a hearing on the petition for modification.

"Relocation of either parent is a changed circumstance that may justify a minor modification, but only if the original parenting plan did not anticipate relocation." *In re Marriage of Tomsovic*, 118 Wn. App. 96, 106, 74 P.3d 692 (2003). Under RCW 26.09.260(5), courts must consider the nature of the relocation and whether the express provisions of the plan contemplate such relocation. *See Tomsovic*, 118 Wn. App. at 101, 106-07; *Hoseth*, 115 Wn. App. at 572. The parenting plan here outlined three different residential schedules depending on Mittge's return to "Pacific County" and how long he remained "home" in Pacific County. CP at 25-26. When the parenting plan was created, each party resided in Pacific County. The express provisions of the parenting plan did not anticipate or plan for Mittge to move outside of Pacific County.

Mittge contends that his relocation to Chehalis was not a substantial change in circumstances because the relocation squared with the original intent of the parenting plan to provide equal residential time when he was not working out of state. However, the proper inquiry is whether the change was "anticipated by the court at the time of the prior decree or plan." *Tomsovic*, 118 Wn. App. at 105. There is no indication that when the parenting plan was entered the court or the parties anticipated that Mittge would move outside of Pacific County.

We conclude that Mittge's leaving his out-of-state job and relocating to Lewis County meets the substantial change in circumstances threshold for a minor modification under RCW 26.09.260(5).

8

b.   No Change of Majority Residence

The second requirement for granting a minor modification under RCW 26.09.260(5) is that the proposed modification "does not change the residence the child is scheduled to reside in the majority of the time." In denying Weisenberger's motion for reconsideration, the trial court concluded that CM did not reside a majority of the time with Weisenberger because Phase 3 of the parenting plan applied and gave Mittge equal parenting time.

However, the parenting plan specifically stated that CM's primary residential placement was with Weisenberger. And the parenting plan clearly contemplated that because of Mittge's out-of-state work, CM would reside a majority of the time with Weisenberger even though the residential time would be equal for periods of time under Phase 3. In addition, even if Phase 3 was always in effect, CM would not reside a *majority* of the time with Mittge. Finally, in the previous seven months CM actually had resided with Weisenberger the majority of the time because Mittge only had visitation every other weekend. Therefore, Weisenberger's proposed modification would not change the residence where CM was scheduled to reside a majority of the time.

We conclude that Weisenberger's proposed modification would not "change the residence the child is scheduled to reside in the majority of the time" as required for a minor modification under RCW 26.09.260(5).

c.   Change of Parent's Residence

The third requirement for granting a minor modification under RCW 26.09.260(5) is satisfying one of three conditions: the proposed modification (a) does not exceed 24 full days in a calendar year, or (b) "[i]s based on a change of residence of the parent with whom the child

does not reside the majority of the time or an involuntary change in work schedule by a parent which makes the residential schedule in the parenting plan impractical to follow," or (c) does not result in a schedule that exceeds 90 total overnights per year under certain circumstances. RCW 26.09.260(5)(a)-(c). In denying Weisenberger's motion for reconsideration, the trial court concluded a minor modification was inapplicable because the modification sought was for more than 24 days.

However, the conditions in RCW 26.09.260(5)(a)-(c) are disjunctive, and therefore Weisenberger's failure to satisfy the 24 day condition is not determinative if another condition is satisfied. Here, Weisenberger relies on RCW 26.09.260(5)(b), Mittge's change of residence. It is undisputed that Mittge had relocated to Lewis County from Pacific County at the time of the court's order. The question here is whether the change in residence made the residential schedule "impractical to follow" as required in RCW 26.09.260(5)(b).[1]

The trial court did not address RCW 26.09.260(5)(b). The court stated that "[u]nder no reading of the statute can the Court consider the Petitioner's proposed parenting plan that changes visitation by 130 days qualifies as a minor modification." But the court failed to recognize that regardless of the extent of the change, a minor modification may be allowed based on a parent's change in residence. And as a result, the court did not determine whether a minor modification was allowed under RCW 26.09.260(5)(b).

---

[1] Mittge argues that Weisenberger is precluded from raising this argument on appeal because she did not make the argument in the trial court and there was no evidence of impracticability. However, in her petition for modification, Weisenberger stated "[t]he current parenting/custody order is *difficult to follow* because the parent who has less residential time with the children has moved." CP at 35 (emphasis added). Weisenberger also raised the issue in her motion for reconsideration, arguing that she pleaded a prima face case for a minor modification under RCW 26.09.260(5)(b).

We conclude that the trial court applied the wrong legal standard and therefore abused its discretion when it did not consider whether Mittge's change in residence provided a basis for a minor modification under RCW 26.09.260(5)(b).

3. Summary

We hold that the trial court erred (1) to the extent that the first two requirements of RCW 26.09.260(5) precluded a finding of adequate cause to schedule a hearing on Weisenberger's motion to modify, and (2) in failing to address whether Mittge's move to Lewis County provided adequate cause for a hearing under RCW 26.09.260(5)(b). Therefore, we reverse the trial court's finding of no adequate cause and remand for the court to reconsider adequate cause under RCW 26.09.260(5). Specifically, the trial court must address whether RCW 26.09.260(5)(b) allows a minor modification.

B. REVISION OF THE PARENTING PLAN

Weisenberger argues that the trial court's February 2018 order revising certain parenting plan provisions constituted an improper modification of the final parenting plan because it (1) redefined the terms "home" and "Pacific County" to "include any residential location within 85 miles of Raymond, WA," CP at 80; (2) ordered the parties to follow Phase 3 even though Mittge no longer lived in Pacific County; and (3) changed the location for exchanging CM and provided that anyone could transport CM. Mittge contends that the court merely clarified the meaning of its terms based on the original intent of the parties. We agree with Weisenberger.

1. Legal Principles

"A permanent parenting plan may be changed in three ways: by agreement, by petition to modify, and by temporary order." *In re Marriage of Christel*, 101 Wn. App. 13, 22, 1 P.3d 600

11

(2000). In order to modify a parenting plan, the trial court must find a "substantial change in circumstances," even if the modification is minor. *See Tomsovic*, 118 Wn. App. at 105-06.

A modification occurs when the effect of the court's ruling causes a party's rights to be "either extended beyond or reduced from those originally intended in the decree," and requires a specific modification procedure to be followed. *Christel*, 101 Wn. App. at 22 (citing *Rivard v. Rivard*, 75 Wn.2d 415, 418, 451 P.2d 677 (1969)). In contrast, a clarification "is merely a definition of the rights which have already been given and those rights may be completely spelled out if necessary." *Rivard*, 75 Wn.2d at 418; *see also Kemmer v. Keiski*, 116 Wn. App. 924, 933, 68 P.3d 1138 (2003). "A court may clarify a decree by defining the parties' respective rights and obligations, if the parties cannot agree on the meaning of a particular provision." *Christel*, 101 Wn. App. at 22.

2.     Redefinition of "Home" and "Pacific County"

The final parenting plan required Mittge's visitation with CM be broken down into three phases or time frames when he was "off work, and/or in Pacific County." CP at 25. The applicable phase depended on whether Mittge returned to "Pacific County" and how long he remained "home." CP at 25-26. If Mittge had occasion to "leave[] Pacific County for less than two weeks," the parties were to "remain in whatever phase was in place when the father left." CP at 26. And Mittge was instructed to "give the mother 48 hours notice when returning to Pacific County and 24 hours notice when leaving Pacific County." CP at 26.

The trial court revised the terms "home" and "Pacific County" to "include any residential location within 85 miles of Raymond, WA." CP at 80. The court stated on the record, "It's a clarification . . . I don't want your client deciding that Pacific County means Pacific County." RP at 40.

12

This revised definition was a modification to the parenting plan rather than a clarification of an ambiguous existing provision. "Pacific County" is an unambiguous term that requires no further interpretation. All subsequent references to "home" under section 8(B) of the plan clearly refer to Pacific County. The revision of these terms goes beyond filling in procedural details and clearly expands Mittge's rights under the plan. Under the parenting plan, Mittge was entitled to visitation with CM provided he returned anywhere within Pacific County. The plan omitted any reference to a particular distance or town. But under the trial court's revision, Mittge now can relocate anywhere within 85 miles of Raymond and still be at "home" or in "Pacific County" for the purpose of determining CM's residential schedule.

Mittge concedes that the "plan uses both 'Pacific County' and 'home' interchangeably," and that the terms "shar[e] a common meaning and a common function within the plan." But he argues that a restrictive definition of "Pacific County" would render all references to "home" meaningless. We agree that the terms are used interchangeably. But we reject Mittge's argument because it is internally inconsistent. Simply because the terms have a shared meaning does not render one term meaningless.

Mittge also argues that a "restrictive definition" would yield an absurd result because he would have no visitation rights at all if he lived outside of Pacific County. We agree. But the way to correct this result is through a minor modification under RCW 26.09.260(5), not through a court's unilateral revision of the parenting plan. And redefining "Pacific County" to include part of any other county yields its own absurd result.

We hold that the trial court erred by revising the terms "home" and "Pacific County" to include "any residential location within 85 miles of Raymond, WA." CP at 80.

3.    Instruction to Follow Residential Phase 3

The parenting plan set out three phases for Mittge's visitation with CM for when he was "off work, and/or in Pacific County," depending on when Mittge returned to "Pacific County" and how long he remained "home." CP at 25-26. The trial court ordered that Phase 3 applied even though Mittge no longer lived in Pacific County.

The instruction to follow Phase 3 altered both parties' visitation rights as provided in the parenting plan. Under the parenting plan, Mittge and Weisenberger were instructed to "share time equally with [CM]" provided Mittge returned to "Pacific County" and "remain[ed] home beyond the fourth week." CP at 25-26. But under the trial court's revisions, Mittge now can relocate anywhere within 85 miles of Raymond and still be entitled to 50 percent visitation with CM under Phase 3.

Therefore, we hold that the trial court erred by instructing the parties to follow Phase 3 of the parenting plan despite Mittge's move to Lewis County.

4.    Revisions to Transportation Provisions

The parenting plan provided that CM would be exchanged for parenting time at "Raymond Police Station or another agreed upon location." CP at 29. The parenting plan also stated that Lorie Mittge could not transport CM. The trial court revised the parenting plan to require the exchange to occur in Pe Ell and to state that any licensed and insured driver could do the exchange.

These revision constituted modifications, not clarifications. The court completely changed the exchange point from Raymond to Pe Ell, which is in Lewis County. And the court completely eliminated the parenting plan's prohibition on Lori Mittge exchanging CM. Accordingly, we hold that the trial court erred in making these revisions.

5.     Summary

We hold that the trial court erred by (1) revising the terms "home" and "Pacific County" to include "any residential location within 85 miles of Raymond," (2) instructing the parties to follow Phase 3 despite Mittge's move to Lewis County, and (3) revising the parenting plan to require the exchange to occur in Pe Ell and to state that any licensed and insured driver could do the exchange.  Therefore, we reverse, in pertinent part, the trial court's February 2018 order.

C.     REMAND TO A DIFFERENT JUDGE

Weisenberger requests that the case be reassigned to a different judge on remand. Weisenberger contends that reassignment is necessary to preserve the appearance of fairness because the trial court expressed concern that she was trying to alienate CM from Mittge.  We disagree.

"Pursuant to the appearance of fairness doctrine, a judicial proceeding is valid if a reasonably prudent, disinterested observer would conclude that the parties received a fair, impartial, and neutral hearing."  *State v. Solis-Diaz*, 187 Wn.2d 535, 540, 387 P.3d 703 (2017). Under this doctrine, a presiding judge must actually be impartial and also appear to be impartial. *Id*.  The question is "whether the judge's impartiality might reasonably be questioned." *Id*.  To make this determination, we apply an objective test that assumes a reasonable person knows and understands all the relevant facts.  *Id*.  The party asserting a violation has the burden of showing evidence of a judge's actual or potential bias.  *Id*.  A party asserting a violation of the appearance of fairness doctrine must produce sufficient evidence demonstrating bias.  *Id*.  Mere speculation is not enough.  *In re Estate of Hayes*, 185 Wn. App. 567, 607, 342 P.3d 1161 (2015).

Reassignment to a new judge on remand is available only in limited circumstances, including where the trial judge will exercise discretion on remand regarding the issue that

triggered the appeal and has apparently prejudged the issue. *Solis-Diaz*, 187 Wn.2d at 540. We remand to a different judge where the facts in the record show that "the judge's impartiality might reasonably be questioned." *Id*. "[E]ven where a trial judge has expressed a strong opinion as to the matter appealed, reassignment is generally not available as an appellate remedy if the appellate court's decision effectively limits the trial court's discretion on remand." *State v. McEnroe*, 181 Wn.2d 375, 387, 333 P.3d 402 (2014).

The record here does not show that the trial judge cannot be impartial. When read in context, the trial judge's observations of the parties were critical of not only Weisenberger but also of Mittge.

Further, there is no indication that the trial court has prejudged this case. On remand, our opinion prevents the trial court from again ruling that the first two requirements of RCW 26.09.260(5) preclude a finding of adequate cause to schedule a hearing on Weisenberger's motion to modify. Instead, the trial court's discretion is limited to deciding for the first time whether Mittge's move to Lewis County provided adequate cause for a hearing under RCW 26.09.260(5)(b). The trial court never expressed an opinion as to the merits of this issue. Because the record does not show that the trial judge cannot be impartial or that he prejudged the issue to be addressed on remand, we decline to reassign the matter to a different judge.

D.     ATTORNEY FEES ON APPEAL

Weisenberger requests attorney fees on appeal under RCW 26.09.140 and RAP 18.1. RCW 26.09.140 gives us discretion to award reasonable attorney fees to either party on appeal "after considering the financial resources of both parties." We must balance the needs of the party requesting attorney fees against the ability of the other party to pay. *In re Marriage of*

*Moody*, 137 Wn.2d 979, 994, 976 P.2d 1240 (1999). Based on the parties' financial declarations, we decline to award attorney fees under RCW 26.09.140.

Mittge contends that we award him reasonable attorney fees on appeal under RAP 18.9(a) because Weisenberger's appeal was frivolous. As discussed above, we rule in favor of Weisenberger on both primary appeal issues. Therefore, Weisenberger's appeal is not frivolous and we decline to award attorney fees on this basis.

CONCLUSION

We reverse the trial court's order denying adequate cause and revising the parenting plan and remand for further proceedings consistent with this opinion. Specifically, the trial court must address whether RCW 26.09.260(5)(b) provides the basis for an adequate cause hearing and allows a minor modification.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, C.J.

We concur:

SUTTON, J.

GLASGOW, J.